Mr. Meade. Thank you, Your Honor. May it please the Court, my name is Chris Meade, and along with my colleague Lance Robinson, I represent Plaintiff Appellant FOX GROUP, which owns the 130 patents. I'd like to reserve seven minutes for rebuttal. I'd like to begin with what I hope should be not really an area of dispute. I don't think there can be any doubt that in the summary judgment briefing before the District Court, FOX met its burden of production to show that there was both direct evidence of concealment and abandonment and inferential evidence of abandonment, suppression, and concealment. You can't get much better direct evidence of an intent to conceal than 30B sex testimony from one of CREE's founders, saying that CREE's policy was to tell the world generally we made something good, but not tell the world how to make it. How do you define the strength of that burden of production? It's actually a fairly light one, because as the case law is very clear in the Amputex case, the burden of proving invalidity remains with CREE by clear and convincing evidence throughout the proceedings. We acknowledge we had that burden of production, but once we make that light burden, then the burden shifts to them to rebut by clear and convincing evidence. And if you look at the Amputex v. Merck case, in that case, if you recall, Merck had commercialized the product for five years, had disclosed all the ingredients in the formulation, and this court found that the evidence showed that by looking at the tablet and figuring out it was a wet granulation, you could reverse engineer the product. Even with all of that, this court found that Amputex had met its burden of production that Merck was still concealing, because in that case, in this one, there was specific factual evidence that there was a conscious decision made not to disclose, not to follow the policy that we have a patent system for, to give the public the benefit of what you've done. Okay, I don't read the trial judge's determination to say that you didn't satisfy that initial burden. I read her determination to say that even if you did, that still, as a matter of law, she felt that by clear and convincing evidence, that they had rebutted it. I'm glad to hear that, because Cree makes a different argument. I understand that, but I don't read the lower court opinion to say that. And I think you're focused now on what's really the key issue. We've got abundant evidence of an intent to abandon, suppress, and conceal. They didn't commercialize this wafer for nine years. So we have a lot of case law that says mere passage of time isn't enough, that there's no hard and fast rule that says, okay, after three years, it's clearly abandoned, or after five years, it's clearly abandoned. You have to have something more. Agreed, which is why this is an issue of underlying facts, inappropriate for summary judgment. Couldn't agree with you more. But the nine years, along with the 30B6 testimony that they had a practice of concealing what they did, so that people couldn't repeat their invention, is awfully strong evidence. Now, what is the sole rebuttal evidence that the district court found invalidated our entire patent? She went back to the coyote. Yes. One article from 1995. Okay, now remember what that article has in it. It has a photograph of a wafer. It has a description of measuring one wafer for one of the defect densities and measuring another wafer, not the same one, for a different product density, and no mention at all of the third product density. So even in terms of the subject matter of the claimed invention, there was no disclosure of our claimed patent. But most importantly, as is clear and I think preconceives, that article was not enabling. It was a printed publication that did not tell the world how they had made their product. But their argument is it doesn't have to be, because since it's a product claim, all they have to do is say, here's the product. What's your authority for saying in your brief, the burden was on creative, proved by clear and convincing evidence that it had conceived a novel operative method for repeatedly producing such SIC wafers. You don't have any authority. I'm sorry, Your Honor, that's, we're switching to a different topic, but while we're talking about burdens. Right, exactly. They have the burden of proving invention. There's no doubt that 102G, there's an it at the end of 102G, and the it is an invention. And this court in the Solvay case clearly applied all of the principles of inventorship to 102G prior art. Inventorship requires conception, reduction to practice. But you're not at an interference. Why do they have any burden at all? Well, I'm sorry. You're not an interference. You're citing interference cases, interference law as to why they have a burden of proving priority or this or that. This isn't an interference, is it? That's true, Your Honor, but the case law, this court has found that the circumstances are entirely analogous. The same standard applies. I don't think so. They're not seeking this patent. No, they're not, but they are seeking to invalidate ours under the same operative provision. So, the same operative provision about whether they. It's not the same, it's G2, it's a new subsection. Right, but under G2, they have to prove that they invented something. That means that they conceived of it, they reduced it to practice, and by reduced to practice, Your Honor, this is an unusual case. Recall that in most situations, when someone makes something, they can actually answer a 30B6 question about how did you make it. And that's what's missing here. Because they exhumed an old wafer from 1995, they hadn't kept the sample, they had no run records, they couldn't tell you how they made it, they couldn't even say they ever repeated the process that made it again. And that's what's missing here. What's so unusual about this case is, I agree with you, most of the time, when somebody can say, hey, we made this thing, they can come into court with how they did it. What's so unusual about this case and why they failed in their burden in terms of proving inventorship is because so much time had passed, they hadn't really appreciated what they had made back in 1995, so much time passed that they couldn't meet the basic standard approved for inventorship. How do you make it? But if we're talking about the first prong, now we've shifted off of abandonment, apparently we're going back to the first prong, but if we're talking about the first prong, isn't it fair to say that reduction to practice presupposes some conception? Are you saying they just like walked in the lab one day and found this, what is it, boulet, is that how you pronounce it? They found this boulet sitting there? Well, if you look at the Mycogen case, this is a classic, this stuff is tough to make. And what Mycogen says and what the Amgen case says is there are some technologies where you're not really sure that you've got the operative method until you actually create it. And so what we've got here, again, I'd agree with you. That's the reduction to practice and conception timing. Right, exactly. We don't have a timing issue. Usually you look at conception because you didn't reduce the practice fast enough. This is not a timing issue. What we're trying to say is even if they made it, which they say they did and we can't rebut because there's no sample left, the difficulty here is because they waited so long, because they really didn't appreciate what they made and they didn't repeat it, they can't walk into court and say how they made it. And that means they can't prove inventorship. I understand your point. Hey, isn't it likely that that day somebody might have understood something? But if they did, why didn't they write the records down? Why didn't they keep track of it? Why didn't they repeat the process? Let me take you back to what you said about three minutes ago when you said they had it in 1995. You used that phrase in describing the boule. It was there. It existed. Is that not correct? It sounded to me like you were conceding that part. Yeah, but it's a frustrated concession because remember, literally at the close of discovery, they announced it. They didn't tell us about it in interrogatory responses. They had never put this thing forth. Literally, in their summary judgment motions, they disclosed the 102G defense to us. And they didn't have a sample left. All they had were the test records back from 1995 and they did some post hoc testing in 2011. You said they had a picture of it. They did have a picture. It was published. It's a prior art. They're not seeking a patent on it based on 1995. It doesn't matter when they conceived it. Your problem is that they published it and said here it is with a picture, a presentation at a scientific meeting. That's your problem, isn't it? Well, I don't think it's any problem at all for us because under the policies of the patent laws, you know, a printed publication as disclosure to rebut abandonment, suppression, and concealment, if you're telling me that you can't just generally say, hey, I made something good, here's a photograph of it, not put it on the marketplace, not make it available for inspection, not tell the public how to make it, think about how you could insulate yourself from all subsequent advancements in the art. But hey, there's a picture out here. I don't have a sample, but I've got evidence that was tested. If some Chinese manufacturer starts writing generic publications that says we've made some really great silicon carbide, I'm not going to give you all the measurements and I'm certainly not going to tell you how we made it, but we've made great stuff. Does that mean they invalidate every patent that gets filed later? I assume we were reviewing a jury determination and that the only evidence they had was this article and the fact that they said, we don't remember how we got there, but we know we got there. Would that be enough to prove conception for a jury to say that they could interpret the fact of reduction of practice as sufficient to establish conception? No, because what's missing, remember reduction to practice has a second prong, which is a operative method that you have determined that it works for the purpose intended. And see, the problem is, it's not just work, oh, we got good stuff. Work also means I can repeat it. So are you saying that you not only want us to say that the judge erred in entering summary judgment, but are you saying you want us to enter direct summary judgment as a matter of law in your favor? I think we're clearly entitled to it on both of those two arguments. I really do. Because they cannot prove, I've got binding 30B6 testimony, that they can't prove they ever repeated the process that made this and they can't tell you how they made it. So that means they cannot prove inventorship. We're entitled to judgment as a matter of law. Similarly, as a matter of law, I would contend that any rebuttal by printed publication should follow the case law of 102A and 102B, which is clear as a bell, both with respect to process and product path. But there is case law that says 102A and 102B are differently analyzed than 102G. Right. 102G has this unique requirement of rebutting abandonment, suppression, or concealment that is not present in 102A or 102B. And that actually, when you think about the purpose of the patent laws, makes it, I think, tougher under 102G than 102A or B. Of course, because 102G, the other side is seeking a patent and therefore has to not only show that this is prior art against your patent, but that they also are entitled and as a matter of priority met all of these difficult requirements for junior parties or whatever to establish conception reduction of practice. They're not doing that. They don't have to do that. Well, again, I believe that the standard is the same, both with respect to interferences and invalidating our patent. In order to get a patent or invalidate our patent, they have to rebut abandonment, suppression, and concealment. They have to prove inventorship. You can have prior art that's 100 years old that obviously was at least abandoned or not developed and is perfectly valid prior art. But that's different. That's a 102A or 102B. They have smart lawyers. I'm sorry. Crete has very smart lawyers. If they had a 102A or 102B defense, they would have presented it to the district court. What they presented was 102G, and they don't have it. The real difficulty, Your Honor, here is regardless of whether it's an interference or not, if we're the second inventor, but we invoke the policy and spirit of the patent laws, we tell the world how to make our product, and we file a patent application. Your cases are legion, saying that second inventor who's been diligent and has made a public disclosure is favored over the prior inventor like Crete. I'm sorry, Your Honor. Who concealed it. Who concealed it. And these folks clearly concealed it. I mean, they published it. The it is an invention. So what they did is publish a picture. Which showed that art existed. Well, no, it didn't, because you can't look at that picture and say it meets the three defect densities of our patent. There's no way you can do that. And you also can't look at that picture and say how they made it. So all of the measurements that were done, both the old ones and the new ones, those were not published within the article, correct? You're right. The article only has, as I said, no reference at all to one of the defect densities. A reference to one way for meeting one of the defect densities, and a second way for meeting another. It's like in basketball. If you said you got a triple-double on three successive days, it doesn't work. No, you've got to get ten rebounds and ten points the same game. You know, I mean, it's got to be on the same wafer. That's what our patent says. And this article does not say that. But most importantly, this is a printed publication to rebut suppression, abandonment, or concealment. How can you rebut that strong showing of concealment by not telling the world in a printed publication how you made your product? The public has no benefit from that article. Because your claims aren't limited to how your client made the product. Is that right? It's also claiming the product.  This is a patent for a thing. I hate to use the word product, because product implies that you've got something you can repeat and make. They don't have that. And something that you marketed. They didn't do that. I mean, so, yes, we have a thing. Our patent claims a thing. But to get a patent, we had to do what all inventors invoking the patent system have to do. We had to file a specification that told the world how to make our product. So, as Paul-Marie Dudzik said, the public would have the benefit of this invention, and it wouldn't be lost. Again, think of 1995. If that article was put in a time capsule, and all silicon carbide disappears off the face of the earth, a thousand years later, it's exhumed. Is anybody going to know how to make silicon carbide from that? That invention is lost. It's absolutely lost. The only way they could have given the public the benefit of that is if they had told the world, here's how you make good silicon carbide. But you're not limiting your request to how you made the good silicon carbide. Absolutely not. You want it however it's made, and the fact that your opponent has a picture that looks as if it was made, you say, never mind. You can't ignore it. It's there. Right. It's a product. Apparently. They don't say how they made it, but you're not limiting your request, although it came afterwards, to how you made it. No, we're not. If they had disclosed the process for making the stuff before we did, we don't get a patent, and they could have. Even if it was a different process? Absolutely. They're entitled to that. We claim the thing. If they made the thing before we did, and disclosed it to the world, and told the world how to make it, they're entitled to a patent, and they're entitled to it. But you're claiming the product, not just your process. Correct, Your Honor. This is not a process patent. I want to make that clear. That's the problem. Again, I don't view it because, again, if you think about the policy behind the patent laws, this article didn't tell the world how to make it, and didn't tell the world how to measure the subject matter of our invention. It just didn't do any of those things. So Palmer V. Dudzik said, the question whether suppression or concealment under 102G is negated ought to be determined by asking whether the public has gained knowledge of the invention, which will ensure its preservation in the public domain. We have not found a single 102G case, and I challenge Cree today because I just can't find it. We have not found one case where 102G was used to invalidate a patent where the prior inventor didn't either commercialize, make it available to the public, or provide an enabling written disclosure. You have to have one or the other. Because it relates to interferences. Well, we've exhausted your time. I'm sorry, Your Honor. Let's go from the other side. We'll save you a couple of minutes for rebuttal. Thank you, Your Honor. Thank you, Your Honor. Can you do me a favor? I know you've got your start all planned out, but can you answer that last question? Have we ever said that 102G can be operative to invalidate a patent in the absence of either an enabling disclosure or commercialization from which there could be a reverse engineering? If we focus on the fact that this case is not about a process, this case is about a product. I understand your point. Can you answer the question, though? Has there ever been a case, product or process or otherwise, that doesn't fall into one of those two categories? Okay. I'm trying to think back. The Dow case was about commercialization in terms of commercialization was enough. There's other cases about filing a patent application to provide the disclosure to the public. This particular case involved the disclosure of the invention, the invention being a new product, a material. The existence of the invention. The existence of the invention in terms of the invention. You don't argue that the Kyoto article was enabling, do you? No. There was no requirement for patents that are directed to products to do more disclosure than disclosing the invention. Telling the world about the invention through a scientific conference, which happened in this case. There was a publication of the disclosure of the invention at that conference. Your answer then to this question and to my question is no, but you would like us to go there now. Well, I don't know all the cases. The big cases in the area are on big products where there's commercialization. The big cases in the area or patent applications are filed. In this case, there's a publication that triggers. Presumably, if there was a case like this, you would have cited it in your brief. You would have looked for it. I mean, we looked for it and couldn't find one. Yeah, but it's clear that what we have to do, our burden was to show that we did not abandon, suppress or conceal. And when you have a publication that's sitting right there that's disclosing the invention, that was all we needed to put in. Whether or not we had other ways to show that we commercialized or did other things to commercialize to bring the invention to the public, to bring the knowledge of the invention to the public was beside the point, at least for purposes of this litigation, because we had a clear publication. Say someone came up with a product and it's tangible and you could hold it. And they go out and have a press conference and say, I made this product. And then they go back and put it into a closet. Is that enough? If that company gets sued for infringement on a patent directed to the same product, what will be the issue is whether or not it stayed in that closet. And actually, in fact, if you're saying that it was already disclosed to the public, it doesn't look like they… You're saying it doesn't matter if it stayed in the closet afterward as long as they… I would think that if they met their burden of showing it wasn't abandoned, suppressed or concealed by their declaration to the world, here it is, the new product. That should protect them from a suit down the road for infringement on a patent directed to the product. Now, obviously, if the patent was directed to a process for making it and the process details were not disclosed, different case. This is about disclosure of the product and giving the benefit and the knowledge of Pree's invention, what they did in 1995. The benefit and the knowledge of that invention, the appreciation, the recognition was put into a paper telling the world about Pree's progress, Pree's breakthroughs. Therefore, disclosing the invention. Can we go to abandonment for a second? Yes. So, do I understand correctly that you argued below and the trial court agreed that all of the evidence that Fox attempted to put in or did put in with respect to what they claimed showed abandonment, suppression or concealment was irrelevant because all of it circles back to the Kyoto disclosure and that's all that was necessary for you to satisfy your burden. The opposition to the motion fairly read in terms of what was Fox arguing in terms of how were they going to show abandonment, suppression or concealment. There was no argument on, oh, it was intentional. There's two ways to show abandonment, suppression or concealment, right? There's the inferential route that shows there's unreasonable delay here in bringing the knowledge of the invention to the public. But as I understand what the trial court said and at least one of your arguments was that none of that matters as long as you read this article. In other words, they both circle back. The abandonment conclusion turned solely on the fact that the article was out there. Yes, once the article is published in the 1995 disclosure, 1996, Cree told the world about the invention and went through and established how there was conception or there was at least recognition, conception, appreciation for the invention. So they were a prior inventor and now the issue is did they abandon, suppress or conceal? So the trial court looked at the argument that Fox made and it was this inferential abandonment, suppression or concealment through unreasonable delay. They didn't pursue the path of saying Cree intentionally tried to suppress or conceal. They simply argued unreasonable delay inferentially. When you say they didn't pursue the path of saying they intentionally, what about the evidence that says that Cree's entire policy was to hide the methodology? The district court judge when evaluating this issue has to address the arguments that are made and when you read… So is this a new argument that Mr. Mead is making now? Yes, we are arguing, they did not argue intentional concealment or suppression below. When the district court judge read their papers, it was all focused on the inferential, the inferential argument that there is abandonment, suppression or concealment through unreasonable delay focused on these different activities. So they didn't raise that rule 36 statement below. I believe that… Something like, well, we didn't want people to know how we did it. So I'm paraphrasing. The briefing was such that the district court judge interpreted their argument as the second way to show abandonment, suppression or concealment through unreasonable delay. As a result, we cite the Fujifilm for the fact that this should be too late. The fact that they can go find in this record… Just because the court interpreted it that way doesn't mean we would find waiver unless the papers really do support a waiver argument. Correct. That's pretty broad. Fairly read, reading these papers, where's the argument? Do they cite all of these facts in their brief? The facts are buried in the record. Of course, you can go into the record… Buried in the record. Are they in their opposition to the motion for summary judgment? For unreasonable delay. For an unreasonable delay argument. But not for intent. Not for intent. But do they have the facts regarding the concealment in their opposition brief below? These facts are in the record below for purposes of showing… Are they in the brief? Are they in the opposition brief or do you have to go read the depositions to find them? Some of them are in and, in general, it's all for the purpose of showing unreasonable delay. But with respect to concealment, there was no concealment of the invention. The invention is a material, a low-defect silicon carbide material, fully disclosed. Yeah, the question is abandonment. It's not concealed. Right, and the district court judge determined that based upon the publication, based upon the conference where it discloses the invention, and it's not all the words in hoc verbae of the claim, it's the invention of a low-defect silicon carbide material. In light of that publication contemporaneous with the reduction to practice, how can you argue any type of intentional or unreasonable delay? If we're focused on what the invention is, it was disclosed. Disclosed, contemporaneous, acknowledging and recognizing what the invention is, a low-defect silicon carbide material, published to the world, and now, years later, Fox with a patent on the same product that was disclosed to the public in 1995 is coming back to try to foreclose free from conducting its business. You concede that it was nine years before there was any commercialization, right? I don't concede that. In this record, we didn't pursue a commercialization path to show that there wasn't abandonment, suppression or concealment. So there's no evidence in the record of any commercialization before 2004? There could be some evidence, but in general, my point is our motion is based on the path of showing we published the invention to the world. For purposes of summary judgment, we didn't also have to get into the issue of did we commercialize, what are the ways that we disclosed the invention to the world. So as a result, this record is limited to relying on showing that the disclosure and bringing the knowledge of the invention to the public was done through publication and through the conference. Obviously, there's other ways that we could have showed it. All right, so you rely heavily on Dow Chemical, but isn't Dow Chemical distinguishable because there was commercialization in that case? There was commercialization in that case, and that case stands for the proposition that disclosing the invention, disclosing the invention which was a product, was enough. Well, in that case, they had disclosing the invention plus commercialization, active commercialization within a 30-month period. Right, and there was no requirement that there was a disclosure in addition to the invention, the product, an operative method for making it because it's a product case. You look at what the invention is, 102G shows. Because they said they made the product available to the world. Right, but not the method for making it, and in that case, reverse engineering the product from the product, there was no evidence of it. So that case is the one that controls this case in the sense that it is a product case. Just give me a second here. It was undisputed that the process for making the foam was never disclosed, nor was there any evidence that you could reverse engineer the product or the process from the foam. Nevertheless, the disclosure of the product alone was sufficient. Because they made the product available to the world. Isn't that the point? It was sufficient because it evidenced the fact that they didn't abandon, suppress, or conceal. Similar to publishing the product, publishing the recognition and acknowledgement that you have a new invention at a conference and in a publication that gets circulated throughout the world. Any other questions? Well, I'm not sure how relevant it is. But in the published report of the Kyoto presentation, it says many times that this is a work in progress and that we are improving our process and improving our procedures, which perhaps is an explanation of why the experimental details and so on weren't included. But it leaves the impression, and obviously this was a goal very much to be desired by everybody, so it leaves the impression that this was work in progress and research in progress, which raises in my mind the question as to the absence of the same sort of question I think that Jumele was asking. It also seems, history shows, that the work was continued. It took quite a while perhaps to get to a commercial stage. So is your view of the law that it really wasn't necessary or appropriate in order to invalidate the adverse patent to go through everything that happened after the Kyoto conference? So there was a research program, and actually Cree was founded to make silicon carbide, low defect density material. That paper reports on progress made over the years and specifically discloses the invention, the product. On the issue of did Cree do it by that date, it is undisputed at this point because they, and Fox, acknowledges there was a wafer that met every single limitation of the claims by the time of that conference. That was the purpose of disclosing in that conference proceeding Cree's invention. There's no dispute that as of that date at least one wafer was made, meaning every single limitation of the claim. And as a result, as of that date, knowing that they recognized and appreciated the invention, a low defect silicon carbide material, they are a prior inventor as of the time that they recognized and appreciated. The issue of whether they should now be allowed to be sued for patent infringement boils down to whether they then, as the second part of 102G requires, did they abandon, suppress, or conceal their invention? And the district court judge looked to that article because the article shows by clear and convincing evidence that how could you abandon, suppress, or conceal when you publish it to the world? Who cares how long it took you to commercialize after that? We didn't need to put in proofs on other ways to show that we didn't abandon, suppress, or conceal. All we needed to do was show one way why we didn't abandon, suppress, or conceal, and we did it through a very straightforward publication. If in fact we concluded that on the first prong you needed to show both conception and reduction of practice, what evidence other than the fact of reduction of practice did you present in the record on conception? There's full evidence, and it's in the briefing, on that the issue of prior invention required us to show that we made it. That's undisputed. And then appreciation... Can you expect my assumption is, assuming that we say you have to show conception, what evidence of conception did you present into the record? Is it just the article? Is that the entirety of the work? There is other evidence. It's summarized at page 19 of our brief. It's the evidence of acknowledgement, recognition, appreciation of the invention. It's not only the article, it's the fact that we had a contract by the government to make this stuff. We have a couple letters in this record writing to the guy that did the testing, saying, here's a great wafer, you measured it before, focus in on the part with low defect density. So there was a lot of evidence in this record that we in fact conceived, and we in fact appreciated, we recognized the subject matter of the claimed invention. One last question before you sit down. Your motion papers sought to invalidate two claims out of the patent. You never sought to invalidate the entire patent on this ground. And I don't know of any case law that would say that where two claims are deemed invalid under 102G, the entire patent is invalidated. So how do you come up here and try to support the trial judge's statement that the entire patent is somehow invalid because of these findings as to two of the claims? Yes, that problem rests on Fox, in terms of Fox appealing the problems with the judgment. But you came up here in response to that and said we think that a judgment should stand and it is correct. How do you justify that saying that that judgment is correct? The argument that was made in terms of the incorrect judgment was based on the lack of declaratory judgment jurisdiction. So their argument on appeal, the only argument on appeal that extends beyond these two claims, is that the district court didn't have declaratory judgment jurisdiction over the other claims. So do you think that judgment below is correct? Do I think it's correct? Yes. We moved on two claims, the court ruled the whole patent invalid, and I guess I'm going to say yes, it seems to be overreaching. However, for purposes of this record, you are. Thank you. It's good to concede something sometimes. Okay. All right. So let's give Mr. Lee five minutes. I'm grateful, Your Honor. That's good. Thank you. A practical patent attorney asking about interference proceedings. I knew there was a case out there for the concept that the burden is the same in an interference and in an infringement suit under 102G. Let me cite to you, if I could, this is footnote 60 of our reply brief, Streck, Inc. v. Research and Diagnostic Systems. That's a District of Nebraska case. It cited Heitzman v. Rudder, Federal Circuit case from 2001. The district court correctly noted that the only difference between the two proceedings is that the challenger must prove invalidity by a preponderance in an interference proceeding, but must prove it by clear and convincing evidence in an infringement suit. And so I think there is case law to establish what I was inarticulately trying to say to you, that the legal standard is the same. And, in fact, if anything, the interference cases arguably help us because they are at a lower standard of proof for the person trying to invalidate the later invention under 102G. What was your footnote number? I'm sorry. It's footnote 60. Oh, I'm sorry. It's not the reply brief. I'm so sorry. It is frustrating to have the Dow case cited as a 102G abandonment, suppression, and concealment case because it is none of those things. It was literally conceded in the Dow case that the later inventor, I mean, I'm sorry, the earlier inventor had diligently pursued commercialization that was conceded by the opposing party. There was literally no issue in that case of abandonment, concealment, or suppression or a need to rebut it. The sole issue in Dow was they had deposition testimony that the guys who had invented, who had made the product, didn't realize they had something patentable. They all said, most of this we got from the Japanese. It doesn't strike us as patentable. And that was seized on by the other inventors. They didn't appreciate their invention. And this court roundly rejected that argument, as it should have. Because, unlike in this case, there was no dispute there that the folks who invented that process for blow and foam understood what the ingredients were, how they worked together, and they determined that the product worked for its intended use, all the basic concepts of inventorship and appreciation. Both of those things are missing here, because Cree can't prove how it made it, didn't repeat it, and I'm losing you, Judge, I can see on that one. You are, because all I'm sitting here thinking is you're saying what they really had was a room full of typewriters and they walked out with Shakespeare the next morning. No, what I'd say is that if you had a room where you charged a person with writing out a Shakespearean sonnet, you would say, here are my process controls, I need a stanza with rhyming couplets alternate and then the last two rhyming together, right? And it's got to be an iambic pentameter. And you'd keep a control on that. And if your monkey at the typewriter achieved that sonnet, you'd know it. Because it would fit process controls, you'd have a record of what the monkey typed. And by God, you could put that in a Xerox machine and reproduce a Shakespearean sonnet made by a monkey. And you could tell the world, this monkey typed a Shakespearean sonnet. He is an inventor of this sonnet. And we know how he did it. So, Cree doesn't have the sonnet. I don't know how he got from basketball to shooting. Right, sorry, sorry, Judge. Okay, I think we understand the issue. I could until that last point, but I don't know. It's all right, we'll decide what the monkey did. Okay, thank you both. The case is taken under submission.